UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KELIS CORPORATION d/b/a HAZARDVILLA
RESTAURANT, JAMES KELIS and
DEBORAH KELIS
        Plaintiffs                      :        CIVIL ACTION
                                                                                   NO.: 301CV1120 CFD
        v.                                      :

LEXINGTON INSURANCE COMPANY     :        MAY 27, 2005
        Defendant

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

      Pursuant to the Federal Rules of Civil Procedure Rule 56, the defendant, Lexington Insurance Company, submits that it is entitled to Summary Judgment in its favor as to the Third and Fourth Counts of the plaintiffs' Amended Complaint dated January 28, 2005. The defendant submits that it is entitled to Summary Judgment as a matter of law as the plaintiffs, James and Deborah Kelis do not have standing to bring suit on behalf of a mortgagee who was not a party to the policy of insurance between Lexington Insurance Company and Kelis Corporation d/b/a Hazardvilla Restaurant. In addition, the plaintiffs, James and Deborah Kelis do not have standing to bring suit individually as they are not parties to the subject contract of insurance. Furthermore, there is no mutual mistake and reformation of the policy is not warranted in the case to add James and Deborah Kelis as named insureds and/or to include a mortgagee. Lastly, the plaintiffs, acting as officers of the Kelis Corporation, failed to read their policy and therefore, cannot seek reformation to add coverage for Loss of Income.

**FACTS:**

The undersigned defendant, Lexington Insurance Company, first issued a dwelling fire insurance policy to Kelis Corporation dba Hazardvilla Restaurant (the named insured) for the premises located at 276 North Maple Street, Enfield, Connecticut in 1999. See Declaration page for the initial policy of insurance (policy period of February 22, 1999 to February 22, 2000) attached as **EXHIBIT A** hereto. The plaintiffs, James and Deborah Kelis were joint title owners of the property in which the Hazardvilla Restaurant was operated on (276-278 North Maple Street, Enfield, Connecticut). See Pages 8 & 9 of the Deposition Transcript of James Kelis attached as **EXHIBIT Q**, hereto. In February of 1999, the plaintiffs' insurance agent, Michael Battaglino, submitted an application of insurance on behalf of the Hazardvilla Restaurant and Kelis Corporation to the Lexington Agent, who in turn submitted the application to Lexington Insurance Company. See Initial application for insurance with a facsimile date of February 19, 1999 date attached as **EXHIBIT B** hereto. Although the application was unsigned, Mr. Battaglino submitted said application as an agent with express authorization from the Kelis Corpoaration. In February of 2000, a request for a renewal quote for the Kelis Corporation d/b/a Hazardvilla Restaurant was submitted to a Lexington Insurance Agent by Michael Battaglino. See Request for a Renewal Quote for policy and correspondence attached as **EXHIBIT C** hereto.

The policy that is the subject of the present action was issued by Lexington Insurance Company, bearing policy number 853-5487 and was effective for the policy period of February 22, 2000 to February 22, 2001. See **EXHIBIT D**.

On October 17, 2000, a fire occurred at the Hazardvilla Restaurant. See State of Connecticut, Department of Public Safety-Division of the State Police investigation report dated November 19, 2000 attached as **EXHIBIT E** hereto. The investigating State Trooper,

Detective William Lewis, determined that the fire at 276 North Maple Street, Enfield, Connecticut on October 17, 2000 was incendiary in origin and was caused by the perpetrator intentionally placing an accelerant soaked rag and papers in the attic and igniting them.  See **EXHIBIT E.**

On October 17, 2000, Sergeant Scott Lewellyn of the Office of the State Fire Marshal's Office contacted the plaintiffs' insurance agent, Michael Battaglino and advised him of the subject fire loss.  See Property Loss Notice attached as **EXHIBIT F**, hereto.

On October 19, 2000, a Property Loss Notice was received by the defendant, Lexington Insurance Company.  See October 19, 2000 dated correspondence from Surplex Underwriters to Bill Lamond of Lexington attached as **EXHIBIT G**, hereto. The subject claim was assigned to William F. Lamond, Jr., a claims representative with Lexington Insurance Company.  See Page 26 of Deposition Transcript of William F. Lamond, Jr. attached as **EXHIBIT H**, hereto.  Lexington Insurance Company retained its own cause and origin expert, Gary Pease of EFI who also determined that the subject fire was intentionally set by the use of an incendiary device.  See report of Gary Pease of EFI is attached as **EXHIBIT I** hereto.

The plaintiffs commenced this present action against the undersigned defendant by Complaint dated June 18, 2001 and filed on June 18, 2001.  See Plaintiffs' Complaint attached as **EXHIBIT J**, hereto.  The plaintiffs' complaint alleged breach of contract, bad faith, violations of Connecticut Unfair Insurance Practices Act/Connecticut Unfair Trade Practices Act, emotional distress, negligence and sought reformation of the subject policy.  See **EXHIBIT J**.  The defendant specifically denied all material allegations and asserted six affirmative defenses.

On June 25, 2001, the claim for damages to the Hazardvilla Restaurant stemming from the October 17, 2000 fire was denied by Lexington Insurance Company.  See Denial Letter attached as **EXHIBIT K** hereto.

On December 29, 2004, the plaintiff's amended their complaint and removed the counts sounding in bad faith, violations of Connecticut Unfair Insurance Practices Act/Connecticut Unfair Trade Practices Act and emotional distress and James Kelis as a party.  See plaintiffs' Amended Complaint dated December 29, 2004, attached as **EXHIBIT L,** hereto.

On January 28, 2005, the plaintiffs amended their complaint once again in which they withdrew the removal of James Kelis as a party.  See plaintiffs' Amended Complaint dated January 28, 2005, attached as **EXHIBIT M** hereto.

On October 21, 2003, the plaintiff, James Kelis pled guilty to arson in the first degree pursuant to the Alford Doctrine.  See Sentencing Transcript of James Kelis dated October 21, 2003, attached as **EXHIBIT  N**, hereto.  Pursuant to that plea, Mr. Kelis admitted that there was a substantial likelihood that he would be convicted of arson if the case went to trial.  See **EXHIBIT N**.

In their Amended Complaint of January 28, 2005, the plaintiffs allege specifically in the Third Count:

- 1 – 12. Paragraphs 1 through 12 of the Second Count are hereby repeated and realleged as paragraphs 1 through 12 of the Third Count.
- 13. At the time the Defendant issued or renewed the policy, it was negligent in failing to include the Plaintiffs' bank as mortgage holder on the policy, failing to provide the Plaintiffs with loss of income insurance and failing to name James and Deborah Kelis individually as named insureds.

  14. The Defendant's negligence included failing to properly obtain complete information from the Plaintiffs and their agents, failing to review prior policies and other information and failing to have the Plaintiffs review the polices for completeness and accuracy.

  15.  As a result of the Defendant's negligence, the Plaintiffs have been damaged.

See **EXHIBIT M.**

  In their Amended Complaint of January 28, 2005, the plaintiffs allege specifically in the Fourth Count:

  1-15. Paragraphs 1 thorugh 15 of the Third Count are hereby incorporated and made paragraphs 1 through 15 of the Fourth.

  16. At the time of issuance or renewal of the policy, the Defendant knew or should have known that the Plaintiffs bank was to be listed, loss of income insurance provided and James and Deborah Kelis names individually as insureds.

  17. The failure of the Defendant to have provided such coverage frustrates the reasonable and equitable expectations of the Plaintiffs and unjustly enriches the Defendant entitling the Plaintiffs to an equitable decree reforming the policy to include the bank, loss of income coverage and James and Deborah Kelis individually as named insureds.

See **EXHIBIT M.**

**ARGUMENT**

I.  **Standard for Granting a Motion for Summary Judgment**

Summary judgment will be granted if there is no genuine issue as to any material facts and the moving party is entitled to judgment as a matter of law.  F.R.C.P. 56(c); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986).  A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for a non-moving party. Aldrich v. Landolf Cent. School District, 963 F.2d 520, 523 (2nd Cir. 1992), cert. denied, 506 U.S. 965, 113 S.Ct. 440 (1992).  The initial burden is on the moving party to demonstrate the nonexistence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once this burden has been discharged, the non-moving party who bears the burden of proof at trial must go beyond the pleadings and isolate specific evidence that shows a genuine issue for trial.  Id. at 324.

In Anderson v. Liberty Lobby, the Supreme Court explained that a genuine issue of fact is one about which the evidence is such that a reasonable jury could return a verdict for the non-moving party.  The Court further stated that:  there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  (internal citations omitted) 477 U.S. at 249-50.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to successfully oppose summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff."  Id. at 252.  If the non-moving party cannot identify such evidence, the Court must enter summary judgment in favor of the moving party."  Celotex Corp., 477 U.S. at 322-323.

**II.    ARGUMENTS**

    **A.    <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO THE THIRD AND FOURTH COUNTS SHOULD BE GRANTED AS THERE IS NO ISSUE OF MATERIAL FACT THAT THE PLAINTIFFS, JAMES AND DEBORAH KELIS, DO NOT HAVE STANDING TO SUE ON BEHALF OF ANY MORTGAGEE.  FURTHERMORE, ANY POTENTIAL MORTGAGEE DOES NOT HAVE STANDING TO SUE AS THEY WERE NOT A PARTY TO THE SUBJECT CONTRACT OF INSURANCE</u>**

        **1.    The plaintiffs, Deborah and James Kelis do not have standing to sue on behalf of any mortgagee against the subject contract of insurance.**

Connecticut Courts have held, "[i]t is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction." <u>Community Collaborative of Bridgeport, Inc. v. Ganim</u>, 241 Conn. 546, 552 (1997)(quoting <u>Unisys Corp. v. Dept. of Labor</u>, 220 Conn. 689, 693 (1991); <u>Ardmare Construction Co. v. Freedman</u>, 191 Conn. 497, 501 (1983).  "Standing is the legal right to set judicial machinery in motion.  One cannot rightfully invoke the jurisdiction of the court unless [one] has, an individual or represented capacity, some real interest in the cause of action or legal or equitable right, title or interest in the subject matter of the controversy."  See <u>Tomlinson v. Board of Education for the City of Bristol</u>,226 Conn. 704, 717 (1993) (internal citations and quotations omitted); <u>Ganim v. Smith & Wesson Corp.</u>, 258 Conn. 313, 347 (2001)  When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the [party] has a legally protected interest [that may be remedied]  <u>In re Jonathan M</u>., 255 Conn. 208, 219

(2001) "It is a basic principal of law that a plaintiff must have standing for the court to have jurisdiction." Dow and Condon v. Brookfield Development Corp., 266 Conn. 572, 579 (2003).

The standing doctrine requires a plaintiff to demonstrate two facts. "First the complaining party must be a proper party to request the adjudication of the issues." Nye v. Marcus, 198 Conn 138, 141 (1985). Secondly, the plaintiffs, or "the person or persons who prosecute the claim on behalf of the complaining party must have authority to represent the party. Community Collaborative of Bridgeport, Inc. v. Ganim, 241 Conn. 546, 553 (1997) See also Orsi v. Senatore, 230 Conn. 459, 470 (1994)(standing of foster parent to sue child's guardian on behalf of child); State v. Nardini, 187 Conn. 109, 112-16 (1982) (standing of state's attorney to challenge recommendation of sentence review division on behalf of state); Barret v. Southern Connecticut Gas Co., 172 Conn. 362, 370 (1977)(standing of shareholder to file derivative action on behalf of corporation); Vaitekunene v. Budrys, 156 Conn. 547, 554 (1968)(standing of legatee's purported attorney to appeal order of Probate Court on behalf of legatee).

In Community Collaborative of Bridgeport, Inc. v. Ganim, supra, the Supreme Court held that the plaintiff did not have the inherent authority to bring action on behalf of the corporation. The Court further held that the corporation itself, was the proper party to request adjudication of that matter. In the present case, like the Community Collaborative case, the proper party to adjudicate any alleged claim of the mortgagee, would be the mortgagee itself, not the plaintiffs, James and Deborah Kelis. The plaintiffs, James and Deborah Kelis do not have the inherent authority to bring suit on behalf of any mortgagee and therefore, do not have standing.

### 2. The mortgagee was not a party to the subject policy of insurance, and therefore, lacks standing to sue.

In addition, the mortgagee is not a party to the subject contract of insurance, therefore, it does not have standing to bring suit on the contract. "It is well settled that 'one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue in order to enforce a promise of the contract…'" Tomlinson v. Board of Education for the City of Bristol, 226 Conn. 704, 718 (1993)  (Quoting Coburn v. Lexon Homes, Inc., 173 Conn. 567, 570 (1977)); See also Knapp v. New Haven Road Construction Co., 150 Conn. 321, 324 (1963).  It is well established that a contract of insurance is a personal contract between the insurer and the insured named in the policy.  See McDivitt v. Pymatuning Mutual Fire Insurance Company, 303 Pa. Super. 130, 449 A. 2d 612,614-615 (1982) (quoting Forsyth County v. Plemmons, 2 N.C. App. 373, 375, 163 S.E. 2d 97, 99 (1968); See also 43 Am. Jur. 2nd *Insurance*, § 194 (1982 Supp. 1989).  It is also axiomatic that an insurance policy is a contract of indemnity which pertains to the parties of the contract as oppose to the property being insured.  See Plemmons 163 SE 2d at 99.  Accordingly an individual who is not a party to the insurance contract cannot maintain a suit under the policy.  Great American Insurance Co. v. Johnson, 25 F.2d 847, 848 (4th Cir. 1928) Cert. Denied 278 U.S. 629 49, S. Ct. 29, 73L. Ed 548 (1928);  See also Couch on Insurance 3D §242:32.

It is quite clear that the subject policy of insurance did not list a mortgagee under Item 7 of the declaration page.  See **EXHIBIT D.**  The initial application for insurance did not list a mortgagee.  See **EXHIBIT B**.  The initial policy had "None" listed for "Item 7 Mortgagee."  See **EXHIBIT A**.  When the policy was renewed, the request for renewal quote did not list or identify and mortgagee interest.  See **EXHIBIT** C.  The subject policy of insurance, listed

"none" as to a mortgagee under item 7 of the declaration page.  See **EXHIBIT D**.  This fact is confirmed by the plaintiffs' agent, Michael Battaglino's request to add a mortgagee to the subject policy on January 29, 2001, after the date of the subject fire.  See Correspondence from Michael Battaglino with a facsimile date of January 2001, attached as **EXHIBIT O**, hereto.   Mr. Battaglino admits that the Hartford County Insurance Agency was not notified by the insured of this change.  See **EXHIBIT O.**  Mr. Lamond also testified that the subject policy did not list a mortgagee.  See Page 122 of **EXHIBIT H.**  Mr. Steven Silverman, Vice President of the Underwriting Department of Lexington insurance testified that the plaintiffs' initial application for insurance left the mortgagee interest question blank.  See Page 23 of  the Deposition Transcript of Steven Silverman attached as **EXHIBIT P**, hereto**.**  When a mortgagee question is left blank on an application, its assumed that there is no mortgagee.  See page 23 of  **EXHIBIT P.**  Mr. Silverman testified that Lexington would not have knowledge of a bank and/or mortgagee interest unless they were requested to add a mortgagee to the policy.  See page 36 of **EXHIBIT P.**    Mr. Silverman testified that Lexington received a request to add a mortgagee for the subject policy period from the Hartford County Insurance Agency after the subject loss had occurred.  See page 41 **EXHIBIT P**.  As cited above, "a contract of insurance is a personal contract between the insurer [Lexington] and the insured named in the policy [Kelis Corporation dba Hazardvilla Restaurant].  Like Tomlinson, the mortgagee is not a party to the contract nor an intended third party beneficiary and therefore, lacks standing to bring a claim against the subject policy of insurance.

    B.    **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO THE THIRD AND FOURTH COUNTS SHOULD BE GRANTED AS THERE IS NO ISSUE OF MATERIAL FACT THAT THE PLAINTIFFS, JAMES AND DEBORAH KELIS WERE NOT PARTIES TO THE SUBJECT CONTRACT OF INSURANCE AND THEREFORE, DO NOT HAVE STANDING TO BRING SUIT ON THAT POLICY AND/OR REFORM THE POLICY TO ADD THEMSELVES AS NAMED INSUREDS.**

        1.    **The plaintiffs, James and Debra Kelis are not parties to the contract and therefore do not have standing to sue on said contract.**

Connecticut Courts have held, "[i]t is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction." Community Collaborative of Bridgeport, Inc. v. Ganim, 241 Conn. 546, 552 (1997)(quoting Unisys Corp. v. Dept. of Labor, 220 Conn. 689, 693 (1991); Ardmare Construction Co. v. Freedman, 191 Conn. 497, 501 (1983). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, an individual or represented capacity, some real interest in the cause of action or legal or equitable right, title or interest in the subject matter of the controversy." See Tomlinson v. Board of Education for the City of Bristol, 226 Conn. 704, 717 (1993) (internal citations and quotations omitted); Ganim v. Smith & Wesson Corp., 258 Conn. 313, 347 (2001) When standing is put into issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the [party] has a legally protected interest [That may be remedied]. In re Jonathan M., 255 Conn. 208, 219 (2001) "It is a basic principal of law that a plaintiff must have standing for the court to have jurisdiction." Dow and Condon v. Brookfield Development Corp., 266 Conn. 572, 579 (2003).

"It is well settled that 'one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue in order to enforce a promise of the contract…'" Tomlinson v. Board of Education for the City of Bristol, 226 Conn. 704, 718 (1993) (quoting Coburn v. Lexon Homes, Inc., 173 Conn. 567, 570 (1977)); See also Knapp v. New Haven Road Construction Co., 150 Conn. 321, 324 (1963); See also Couch on Insurance 3D §242:32.

In Mazon v. Camden Fire Insurance Association, 182 W.Va. 532, (1990), an owner of one-half interest in former marital property brought an action against Fire Insurer, and the insured/owner of the one-half interest in the former marital property. The plaintiff claimed that she was entitled to a portion of the fire insurance proceeds based upon her one-half ownership in the former marital property. The West Virginia Supreme Court, in holding that a fire insurer is fully discharged under all claims under a fire insurance policy upon payment of fire insurance proceeds to the named insured (pursuant to a West Virginia statute), further stated that an insurance policy and all rights arising from the policy are controlled by the principles of contract rather than property law. See Id. The court went on to note that an insurer, such as defendant insurer, "is under no obligation to investigate property records to identify each individual with an ownership interest in connection with the issuance of a fire insurance policy." Id. The Court noted that a contract of insurance is a personal contract between the insurer and the insured named in the policy. See Id. (internal citations omitted). "Accordingly, an individual that is not a party to the insurance contract cannot maintain suit on that policy." Id. (internal citations omitted)  The co-ownership of property does not itself entitle an individual to an insurance proceeds. Id.

Under this general proposition, the plaintiffs, James and Deborah Kelis who are neither a party to nor a contemplated beneficiary of the subject policy of insurance, lack standing to bring an action on that contract. The initial application for insurance submitted by the

plaintiffs' agent to Lexington's agent did not list either, James and/or Deborah Kelis as applicants, the only named applicant was Kelis Corporation, d/b/a, Hazardvilla Restaurant. See **EXHIBIT B.** The initial policy of insurance with Lexington Insurance Company did not list either James and/or Deborah Kelis as named insureds, only Kelis Corporation, d/b/a, Hazardvilla Restaurant. See **EXHIBIT A**. Although the application was unsigned, Mr. Battiglino submitted said application as an agent with express authorization from the Kelis Corporation. The request for renewal quote in 2000 did not list either, James and/or Deborah Kelis as applicants, the only named applicant/insured was Kelis Corporation, d/b/a, Hazardvilla Restaurant. See **EXHIBIT C**. Most importantly, the subject policy of insurance did not list either of the plaintiffs, James and Deborah Kelis, as named insureds. See **EXHIBIT D**. In his deposition of April 15, 2005, William F. Lamond, a Senior Claims Examiner for Lexington Insurance Company testified that the subject policy insured the Kelis Corporation and that the plaintiff, Debra Kelis, was not an insured at that time. See pages 100 and 101 of **EXHIBIT H**. Furthermore, Mr. Lamond testified in his deposition of April 15, 2005, that the insured was the Kelis Corporation, d/b/a Hazardvilla Restaurant. See Page 101 of **EXHIBIT H**. Mr. Lamond further testified at his deposition that a claim was received from Hazardvilla Restaurant. See page 102 of **EXHIBIT H.** Quite simply, the plaintiffs, Deborah and James Kelis were not parties to the subject policy of insurance, therefore, they do not have standing to maintain any action on the subject policy.

> **2.     The Policy of insurance cannot be reformed to add the plaintiffs, James and Deborah Kelis as named insureds because there is no mutual mistake.**

Reformation is appropriate when a written instrument fails, as the result of a mutual mistake, to express the real agreement or transaction.  Harlach v. Metropolitan Property & Liability Insurance Company, 221 Conn. 185, 190-91 (1992).  "Reformation is also available in equity when the instrument does not express the true intent of the parties owing to mistake of one party coupled with fraud, actual or constructive, or inequitable conduct on the part of the other." Id.   The burden of proof on the issue of reformation is on the party seeking it. Lopinto v. Haines, 185 Conn. 527, 535, 441 (1981). "If by reason of mutual mistake or by reason of a unilateral mistake which is coupled with fraud or inequitable conduct on the part of the other party, a written agreement does not express the true intent of the parties, the agreement may be reformed."  Rodie v. National Surety Corporation, 143 Conn. 66, 69 (1955); Shawmut Bank v. Connecticut Limousine, 40 Conn. App. 268 (1996).  "The standard of proof requires evidence that is clear, substantial, and convincing." Id.  "This standard of proof should operate as a weighty caution upon the minds of all judges, and it forbids relief wherever the evidence is loose, equivocal or contradictory…." Id. at 539, 441 A. 2d. 151 (1981).  In addition, the Connecticut Supreme Court has cautioned that actions to reform the clear written provisions of a contract are to be viewed with caution and relief should be granted only where the evidence is clear. E.g. Greenwich Contracting Co. v. Bonwit Construction Company, 156 Conn. 123 (1968).

There is no mutual mistake in the present case, and therefore, the contract should not be reformed to include the plaintiffs, James and Deborah Kelis as named insureds.  As noted above, reformation is available when the contract does not express the true intent of the

*parties*. (emphasis added).  The plaintiffs are seeking reformation and therefore, claim that the subject policy of insurance does not express their true intent, however, the subject policy of insurance does express the true intent of Lexington Insurance Company.  For mutual mistake to exist, the mistake must be mutual and common to both parties, in essence there must be a mutuality of the mistake as to both parties.  In the present case, the mistake is claimed by the plaintiffs, however, there is no evidence or proof that the mistake claimed was common or known to Lexington Insurance Company.  The initial application for insurance with Lexington did not list either, James and/or Deborah Kelis as applicants, the only named applicant was Kelis Corporation, d/b/a, Hazardvilla Restaurant.  See **EXHIBIT  B**.  The initial policy of insurance with Lexington Insurance Company did not list either James and/or Deborah Kelis as named insureds, only Kelis Corporation, d/b/a, Hazardvilla Restaurant.  See **EXHIBIT A**.  The request for renewal quote did not list either, James and/or Deborah Kelis as applicants, the only named applicant was Kelis Corporation, d/b/a, Hazardvilla Restaurant.  See **EXHIBIT C**.  Most importantly, the subject policy of insurance did not list either of the plaintiffs, James and Deborah Kelis, as named insureds.  See **EXHIBIT D**.  The plaintiff's application for insurance that was submitted by their insurance agent to Lexington's agent never included and/or requested that Deborah and James Kelis be added as named insureds.  See **EXHIBIT B**.  In his deposition of April 15, 2005, William F. Lamond, a Senior Claims Examiner for Lexington Insurance Company testified that the subject policy insured the Kelis Corporation and that the plaintiff, Debra Kelis, was not an insured at that time.  See pages 100 and 101 of **EXHIBIT H**.  Furthermore, Mr. Lamond testified in his deposition of April 15, 2005 that the insured was the Kelis Corporation, d/b/a Hazardvilla Restaurant.  See Page 101 of **EXHIBIT H**.  Mr. Lamond further testified at his deposition that a claim was received from Hazardvilla Restaurant.  See page 102 of **EXHIBIT H**.  It is clear that Lexington procured the exact policy of insurance

that was requested and submitted by the plaintiffs via their insurance agent, Michael Battaglino and submitted to Lexington's agent. "The doctrine of mutual mistake must not routinely be available to avoid the results of an unhappy bargain. Parties should be able to rely on the finality of freely bargained agreements." Barker v. Roelke, 105 S.W. 3d 75, 84 (2003). In the present case, the plaintiffs should not be allowed to reform the contract as a result of an unhappy bargain, and most importantly hindsight.

"A mistake by only one party to an agreement, not known to or induced by acts of the other party, is not grounds for finding a mutual mistake. St. Paul Lloyd's Ins. Co. v. Fong Chun Huang, 808 S.W. 2d 524, 527 (1991). The plaintiffs claim that the subject policy of insurance does not express their true intent however, any mistake claimed by the plaintiffs is quite simply a unilateral mistake, without a scintilla of inequitable conduct, which does give rise to reformation of the subject policy.

Furthermore, "a basic principle of equity is that equitable remedies will not be awarded where the plaintiff has an adequate remedy at law." Kmart Corporation v. First Hartford Realty Corp., 810 F. Supp. 1316. (1993); Cahill v. Board of Education of the City of Stamford, 187 Conn. 94, 98 (1982). Reformation is not warranted as the plaintiffs have an adequate remedy at law. In his deposition, the plaintiff, James Kelis, testified that he and his wife, Deborah are the only two shareholders in Kelis Corporation. See Page 7 **EXHIBIT Q**. See generally Joes' Pizza v. Aetna, 236 Conn. 863 (1996). The plaintiff, James Kelis, and his wife, Deborah are the company. See Pages 7, 44, 47 of **EXHIBIT Q**. Even the plaintiff, Deborah Kelis, testified that she and her husband are the Corporation. See Page 38 Deposition Transcript of Deborah Kelis attached as **EXHIBIT R.** It is clear from the testimony of the plaintiffs, that the named insured, Kelis Corporation dba Hazardvilla Restaurant is a closely held corporation. See generally Joes' Pizza v. Aetna, 236 Conn. 863 (1996). Mr. Lamond

testified in his deposition that if the claim had been accepted the Kelis Corporation dba Hazardvilla Restaurant, the named insured under the subject policy, would have been paid pursuant to the building and personal property coverage.  See pages 122 and 123 of **EXHIBIT H.**  Because Kelis Corporation is a closely held corporation, and because Kelis Corporation and James and Deborah Kelis are the same, the insurance proceeds for Kelis Corporation would have been negotiated by Mr. Kelis and/or Mr. Kelis as officers of the Corporation, and the money would have passed directly into their hands as owners of the property.  Therefore, the plaintiffs have an adequate remedy of law, and the equitable remedy of reformation is not warranted.

        C.        **THERE IS NO ISSUE OF MATERIAL FACT THAT THE PLAINTIFFS FAILED TO REQUEST BUSINESS INTERRUPTION LOSS TO BE INCLUDED IN THE SUBJECT POLICY OF INSURANCE.**

The insureds are charged with the knowledge of the contents of the terms and conditions of the policy of insurance.  "Upon acceptance of an insurance policy and in the absence of fraud or misrepresentation, an insured is charged with the knowledge of all terms and conditions of the policy."  Western Worlds Insurance v. Stack Oil, Inc. 922 F.2d 118 (2nd Cir. 1990) (citing Merchants Indemnity Corp. v. Eggleston, 37 N.J. 114, 179 A.2d 505, 508 (1962)), Metzger v. Aetna Insurance Co., 227 N.Y. 411, 415-416, 125 N.E. 814, 816 (1920); Manson v. New York Life Insurance Co., 229 A.D. 670, 675-76, 243 N.Y.S. 579, 586-87 (1st Dep't 1930).  See also Mills v. Cosmopolitan Insurance Agency, Inc., 424 A.2d 43, 48 (D.C.1980).  In Vitanza v. Amica Mutual Insurance Co., 76 Conn. App. 570, 578 (2003), the Connecticut Appellate Court stated, "Although we know that insurance buyers rarely read all

of the terms of the insurance policies that they purchase, we hold them to have constructive knowledge of the terms of the policy as they reasonably could have been understood." See Id.

The plaintiff, James Kelis admitted in his deposition of March 4, 2005 that he knew what loss of income insurance was, but never requested that coverage. See Page 42 of **EXHIBIT Q**. Mr. Kelis further testified at his deposition of March 4, 2005 that he had no reason to ask Mr. Battligno to obtain loss of income insurance. See Page 43 of **EXHIBIT Q**. Mr. Kelis further admitted that he did not read the insurance policies for the restaurant. See Page 41 of **EXHIBIT Q**.

In her deposition of March 4, 2005, the plaintiff, Deborah Kelis testified that she did not read the insurance policies for the Hazardvilla Restaurant. See page 25 of **EXHIBIT R.** Furthermore, she admitted she did not know what loss of income insurance was and did not request loss of income insurance to be added to the policy of Kelis Corporation because she did not know what it was. See Pages 25 and 26 of **EXHIBIT R**. In his deposition of April 15, 2005, Mr. Silverman testified that in order to obtain business interruption coverage an insured or an applicant would have to request it. See page 55 of **EXHIBIT P**. Mr. Silverman confirmed in his deposition that from his review of the subject policy, business interruption coverage was not provided. See page 54 of **EXHIBIT P**. Once business interruption coverage is requested the company will add terms and conditions which provides that coverage. See page 55 of **EXHIBIT P.** Mr. Silverman further testified that business interruption coverage is not automatically provided but must be requested and noted on an application for insurance. See page 55 of **EXHIBIT P.**

From the testimony of the plaintiffs, Deborah and James Kelis, as officers of the insured, Kelis Corporation, it is clear that they did not read the policy of insurance and are therefore, charged with the knowledge of all the terms and conditions of the policy. The

mistakes of the plaintiffs, James and Deborah Kelis are unilateral and do not constitute as mutual mistake therefore, any reformation of the policy is not warranted to include a coverage as to the business interruption and/or loss of income insurance.

     As we argued above, the subject policy of insurance should not be reformed to include and/or list non-parties as named insureds.  Likewise, the subject policy cannot be reformed to include additional coverages that were not requested in the initial application for insurance.

     **WHEREFORE**, the defendant now moves for Summary Judgment as to the Third and Fourth Counts on the basis that no genuine issue on material fact or law exists and the defendant is entitled to Summary Judgment as a matter of law.

        DEFENDANT,  LEXINGTON INSURANCE COMPANY


By_____/S/_____
        Steven B. Ryan
        Skelley Rottner P.C.
        P.O. Box 340890
        Hartford, CT  06134-0890
        (860) 561-7077
        Fed. Bar No. ct22570

## **CERTIFICATION**

      I hereby certify that a copy of the foregoing was mailed, postage prepaid, on May 27, 2005, to the following counsel of record:

Jon D. Biller, Esq.
Biller, Sachs, Raio & Bonadies
2750 Whitney Avenue
Hamden, CT 06518
*(203) 281-1717 phone*

                                      _____/S/_____
                                            Steven B. Ryan

SR231739