**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**KELIS CORPORATION d/b/a HAZARDVILLA**
**RESTAURANT, JAMS KELIS AND**
**DEBORAH KELIS** : **CIVIL ACTION**
                    **Plaintiffs**

    **v.** : **NO. 301CV 1120 CFD**

**LEXINGTON INSURANCE COMPANY** : **July 15, 2005**
    **Defendant**

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.    Counterstatement of Facts

On October 17, 2000 a fire occurred which substantially destroyed the Hazardvilla

restaurant building owned by Mr. and Mrs. Kelis and the restaurant equipment and inventory

located therein owned by Kelis Corporation.  The Defendant has denied the Plaintiff's claim

asserting, in pertinent part, that Mr. Kelis committed arson.  The Defendant claims that Mr.

Kelis utilized the services of an employee by the name of Mr. Gagne in burning down the

Hazardvilla restaurant building because at the time of the fire Mr. Kelis was at home in bed

with his wife.  (See denial letter attached hereto as Exhibit 1)  Relevant to this motion, in the

reference portion of the Defendant's denial letter, the Defendant states that the insured is

"James Kelis (Kelis Corp.) dba Hazardvilla," (emphasis supplied) and the letter is addressed

to "Mr. James Kelis" in care of his attorney. (Denial Letter Ex. 1)  Mr. Kelis denies the

1

Defendant's claim of arson and Mrs. Kelis and Kelis Corp. appear as innocent insureds in this case.

The Plaintiff, Kelis Corp. owned the restaurant business and equipment, and the Plaintiffs, James and Deborah Kelis ran the restaurant and owned the building containing the restaurant called the Hazardvilla.  James and Deborah Kelis are the sole shareholders and only officers of Kelis Corporation.  (See Affidavit of James Kelis attached as Exhibit 2.)  Mr. and Mrs. Kelis also owned a multi-family rental dwelling on the same lot as the Hazardvilla Restaurant building and have operated the restaurant since the mid 1980s.

Mr. and Mrs. Kelis utilized the services of their local insurance agent, Michael Battaglino (hereinafter "Battaglino"), for a number of years to insure their residence, to insure their multi-family home and to insure the Hazardvilla restaurant building and the restaurant equipment.  (Kelis Affidavit Ex. 2)(See also Affidavit of Michael Battaglino attached as Exhibit 3)  Mr. Battaglino utilized the services of an insurance broker, by the name of Robert Coleman, who places insurance for insurance companies, including the Defendant.  (Battaglino affidavit Ex. 3)

On behalf of the Defendant, the broker Coleman procured an insurance policy which provided insurance for the Hazardvilla restaurant building in the amount of $525,000.00 and provided insurance for Kelis Corporation's restaurant equipment and inventory in the amount of $95,000.00.  The policy which was in effect in October of 2000 was at least the second renewal between the Plaintiffs and the Defendant.  Each policy had been procured with the

assistance of the Defendant's broker, Coleman and with the assistance of the Kelis's personal

agent, Battaglino.  (Affidavits of Kelis and Battaglino Ex. 2 and 3)

Contrary to the Defendant's assertion that the Defendant "first issued a dwelling fire

insurance policy to Kelis Corporation dba Hazardvilla Restaurant…," in fact the initial

application named two insureds: Kelis Corporation (owner of the restaurant equipment and

business property) and Hazardvilla Restaurant ( a non-entity but intended to mean James and

Deborah Kelis).  (See Application attached as Exhibit 4)(See also Battaglino Affidavit at

Ex.3).  The Defendant completely ignores the fact that the initial application listed two

separate insureds.  As will be discussed, the fact that the initial application listed two

insureds is but one of the reasons why the Defendant's motion for summary judgment must

be denied.

Another omission in the Defendant's statement of facts is that there are documents

missing from both the Defendant's underwriting file and from the Defendant's broker's file

which are relevant to this motion for summary judgment.  These documents apparently

include the 2000 renewal application.  The broker's deposition was recently taken, and he

supposedly produced his entire file and documentation covered by the deposition production

request attached hereto as Exhibit 5.  However, Mr. Coleman testified that there should be

renewal applications for each year following the initial application, and he does not appear to

have those documents.  Indeed, the deposition was adjourned for the express purpose of

locating additional documentation requested in the production request, and the deposition has yet to be resumed. [1]

There is, to say the least, confusion about the insurance documents. The Defendant characterizes its Exhibit B as the initial application and references its Exhibit C as the renewal quote when, in fact, Defendant's Exhibit C is the declarations page of the policy in effect for the year 1999 to 2000, prior to the fire. The Defendant's Exhibit A references one insured, Kelis Corp. and Defendant's Exhibit C also references Kelis Corp. What is missing from the Defendant's documentation and what appears to be missing from its own underwriting file is the renewal application that forms the basis of the policy which was in effect on the date of the fire. This application should have reflected two insureds, Hazardvilla Restaurant and Kelis Corp. as reflected on the original commercial insurance application. (See correspondence between counsel concerning the possible omissions from the underwriting file attached hereto as Exhibit 6.) [2]

Absent from Defendant's supporting papers is the fact that there is a significant change from the original application which clearly lists two insureds, one for the building and one for the equipment, and the subject policy which mysteriously combined the two insureds and now references a non-entity, Kelis Corp. dba Hazardvilla Restaurant. There is

---

[1] The transcript excerpts pertaining to the missing documents and the need to resume the deposition will be supplied to the Court as soon as they are received.

[2] Defendant's Exhibit B which purports to be the application is a somewhat curious document. On one place Hazardvilla Restaurant and Kelis Corp. clearly appear as two separate insureds. In another place, the second insured appears to have been whited over.

no explanation given by the Defendant for the change from two insureds to one, but it is clear that none of these changes had anything to do with the Plaintiffs. (Affidavits at Ex. 2 and 3) The Plaintiffs never signed any applications with the Defendant although they did have insurance for a number of years through the same agent, and assumed and understood that their respective interests relative to the ownership of the building and the ownership of the equipment were being properly protected for the valuable premiums they were paying. The affidavit of the agent, Battaglino (Ex. 3) clarifies for the Court what the intention of the insurance was, and that was to protect the interests of Mr. and Mrs. Kelis as it pertained to their buildings and through their closely held corporation, Kelis Corp., as it pertained to the restaurant equipment. If Mr. and Mrs. Kelis are not specifically named on the policy, that was a mistake. (Battaglino Affidavit Ex. 3)

Hazardvilla Restaurant is simply the name of the building in which the restaurant was located and the name of the restaurant. The only relevant entities would be Mr. and Mrs. Kelis who personally owned the Hazardvilla Restaurant building as well as the multi-family home located on the lot and who also owned the restaurant equipment through the closely held corporation. Mr. Kelis would be reasonable in assuming he was insured when his corporation was named and when the Hazardvilla Restaurant was also named. The Defendant also does not mention the fact that it's broker, Coleman was responsible for an earlier policy from 1998 to 1999, the declarations page of which is attached hereto as Exhibit 7. The declarations page clarifies why there were two insureds listed on the insurance

application which formed the basis of the Defendant's insurance policy. The reason is

because there were two insureds, Hazardvilla Restaurant (intended to mean James Kelis) and

the second being Kelis Corp. This is how the application with the Defendant reads, but it is

not how the Defendant's policy reads. In the initial application submitted to the Defendant

through its own broker, there is a reference to prior insurance. (See Excerpt of Application

for Insurance at Exhibit 8) One such prior policy is the Hermitage Insurance policy which

clearly reflects two separate insureds. (See Hermitage policy at Ex. 7.)

Another link between Mr. Kelis individually and Hazardvilla Restaurant and Kelis

Corporation is another prior insurance document from UTICA First attached as Exhibit 9.

UTICA is expressly mentioned as prior insurance in the Defendant's application. The

UTICA first documentation references as the insureds "Kelis Corp. and Hazardvilla

Restaurant James G. Kelis" which is precisely how the policy in this case should be reformed

if the Defendant claims the Kelises are not insureds. Somehow the Utica First language

specifically naming James Kelis did not get repeated when the subject policy was issued.

While the Plaintiffs believe the subject policy covers Mr. and Mrs. Kelis as insureds, the

designation set forth on the UTICA document would clearly put the issue at rest if it was

repeated onto the subject policy.

What is extremely curious, and what the Plaintiffs submit form another reason

summary judgment is not appropriate in this case is the denial letter. The denial letter

references the insureds the same way they were referenced in the UTICA policy and the

same way the Plaintiffs argue to the Court the policy should read in their reformation count. The Defendant clearly references "James Kelis, Hazardvilla Restaurant and Kelis Corporation." (Emphasis supplied)  The Defendant's own denial letter is contrary to the position now being taken by the Defendant in its motion for summary judgment.

A further fact which should be considered by the Court when considering the motion for summary judgment is what makes sense.  The Defendant insured the Kelis Corporation's equipment for $98,000.00, accepted the premium for it, and apparently concedes that if it does not prevail on its other defenses in Court it will tender that amount to Kelis Corporation less other adjustments, etc.  The Defendant insured the building for $525,000.00 for over two years and accepted a valuable premium for that amount of insurance.  Clearly, if Kelis Corporation never owned the building and if the Defendant is arguing that Mr. and Mrs. Kelis are not supposed to be on the policy, then who was paying the premium for the building coverage and whose interest was the policy intended to protect?   Is it the Defendant's contention that it is equitable to take money to insure the building in the amount of $525,000.00 and not pay the owner should the building become damaged by an insurable loss?  Is the Defendant now contending it pays no one?  The answers to these common sense questions would dictate a finding against the Defendant in its motion for summary judgment.

A final factual omission is the failure of the Defendant in its statement of facts to note any of the definitions in the insurance policy.  The policy states that with respect to corporations, insureds will include shareholders, officers and directors.  (Some of the policy

definitions are attached as Policy Excerpts at Ex. 10.)  By virtue of the fact that Kelis Corporation was a named insured, James and Deborah Kelis who are the officers and sole shareholders are also named insureds.  Even if they are not specifically named, they are insured by the Defendant's own definitions contained in the insurance policy.  This is yet another reason summary judgment should be denied.

In sum, the Plaintiffs are alleging negligence against the Defendant for its failure to properly list Mr. and Mrs. Kelis as insureds, its failure to properly list the mortgage holder and to provide loss of income insurance.  The mortgage was listed on earlier documents, Mr. and Mrs. Kelis were intended to be listed and as reflected by the affidavit of Mr. Battaglino, if they are not specifically named and should have been, that was a mistake.  If it was a mistake, it was one that requires reformation.  As a result of the denial of the claim, the Kelis's have never been compensated for the loss to the building or to the property therein. As a result of the failure to name the bank the mortgage was foreclosed and it was a blanket mortgage also secured by the marital residence which they have also lost.  The damages in this case are significant, the claims against the Defendant involve mixed questions of law and of fact and there is no basis to grant summary judgment as requested by the Defendant.

II.    <u>LAW</u>

    a.    <u>The Defendant's Motion For Summary Judgment Should Be Denied As</u>

          <u>Summary Judgment Cannot Be Granted As To Portions Of A Count.</u>

The Defendant has requested that summary judgment be granted as to certain portions of the Plaintiff's Third and Fourth Counts and this is not permitted.  The Defendant has quoted in full the Plaintiff's Third Count alleging negligence and has quoted in full the Plaintiff's Fourth Count seeking reformation of the insurance contract.  However, the Defendant's motion does not seek judgment as to both of these counts in their entirety. Instead, the Defendant is attempting to obtain partial relief as to portions of individual counts which is not permitted.

For example, in Defendant's argument labeled A, it is arguing that partial summary judgment should be granted as to both the third and fourth counts claiming:

> there is no issue of material fact that the Plaintiff's James and Deborah Kelis do not have standing to sue on behalf of any mortgagee.  Furthermore, any potential mortgagee does not have standing to sue as they were not a party to the subject contract of insurance."  (Def. Memo. at 7)

However, the question of whether or not the Defendant was negligent in failing to name a mortgage holder and whether the policy should be reformed to include the mortgage holder is only one portion of the allegations set forth in the third and fourth count.  In the third count, the Plaintiff has alleged, among other things, negligence in failing to "include the Plaintiff's bank as mortgage holder on the policy, failing to provide the Plaintiff's with loss of income

insurance and failing to name James and Kelis individually as named insureds." (See Complaint attached as Exhibit 11) The Plaintiffs also allege negligence in failing to "obtain complete information … failing to review prior policies … and failing to have the Plaintiffs review the policy…" The Defendant cannot reference one portion of these various allegations, specifically those involving the mortgage holder, and ignore the balance of the allegations to obtain summary judgment on the entire count. The procedure the Defendant has employed is fatally defective and summary judgment should be denied on this basis alone.

It appears well settled in both the Federal Courts and the Connecticut Courts that though a party may move for summary judgment upon all or part of his claim, Federal Rule 56 "does not authorize a summary judgment for a part of a single claim in suit." Biggins v. Oltmer Iron Works, 154 F.2d 214 (7th Cir. 1946). See also Pasquel v. Owen, 97 F.Supp. 157 (D.C. Mo. 1951) and Sloane v. Land, 16 F.R.D. 242 (S.D.N.Y. 1954).

In Connecticut, the "majority of courts which have considered the issue have held that the moving party cannot eliminate some allegations in a single count by resort to summary judgment…the Court believes that summary judgment is not appropriate as to only a portion of a single count…" Danbury Mall Associates L.P. v. Meghas, 2002 WL 442382 (Conn. Super. Feb. 26, 2002)(Attached hereto as Exhibit 12). See also Cave v. Farm Family Mutual Insurance Co., 1996 WL 753115 (Conn. Super. Dec. 31, 1996) (Attached hereto as Exhibit

13).  Here, the Defendant is seeking to obtain summary judgment as to portions of a single count and it cannot do so.  On this basis alone, summary judgment should be denied.

As another example, at point C of its memorandum the Defendant is seeking summary judgment arguing "there is no issue of material fact that the Plaintiff failed to request business interruption loss to be included in the subject policy of insurance."  (Def. Memo at 17)  The Defendant makes a short argument at point C essentially taking the position the insurance policy does not have loss of income insurance and that in order to obtain it that would have to be specifically requested.  In this regard, the Defendant cites from the deposition of its underwriter.  The Defendant further argues that in the Plaintiff's depositions, Mrs. Kelis testified that she did not read the insurance policies for the restaurant, and the Defendant concludes:

> from the testimony of the Plaintiffs, Deborah and James Kelis ... it is clear they did not read the policy of insurance ... the mistakes of the Plaintiffs, James and Deborah Kelis are unilateral and do not constitute as mutual mistake therefore, any reformation of the policy is not warranted to include a coverage as to business interruption and/or loss of income insurance. (Def. Memo at 18-19)

Once again, however, it is clear from a reading of the Plaintiff's third and fourth counts that the failure to include loss of income insurance as an element of negligence in the third count and the request that the policy be reformed to contain said insurance in the fourth count are only portions of the allegations contained in those two counts.  The Defendant has completely ignored the additional allegations pertaining to James and Deborah Kelis not

having been named as insureds individually and has completely ignored the provisions of the third and fourth count pertaining to negligence for failure to name the mortgage holder and the request the mortgage holder be added under the reformation portion of the policy.

In sum, this Court need not address the merits of the Defendant's arguments because the Defendant has not moved with respect to the entire third or fourth count but instead has moved for summary judgment as to portions of these counts.   This is not permitted and summary judgment should be denied on this basis alone.

      b.      <u>Whether The Defendant Was Negligent In Failing To Name The Mortgage Holder On The Insurance Policy Is A Question Of Fact Precluding The Granting Of Summary Judgment.</u>

The Defendant, in point A of its Memorandum in Support of its Motion for Summary Judgment appears to argue that the Plaintiffs, James and Deborah Kelis and Kelis Corporation do not have standing to make claim for the Defendant's alleged failure to include the mortgage holder on the insurance policy.  What the Defendant has completely mischaracterized is that the Plaintiffs are not suing as the mortgage holder.  The Plaintiffs are suing for their personal damages caused by the negligence of the Defendant in failing to include the mortgage holder on the policy, and they are requesting reformation to add the mortgage holder to the policy.  These are not questions of standing.  These are questions of negligence and damages which are always questions of fact for a jury and not appropriately

decided upon a motion for summary judgment.   Fogarty v. Rashaw, 193 Conn. 442, 476

A.2d 582 (1984) and Michaud v. Gurney, 168 Conn. 431, 362 A. 2d 857 (1975).

    The Plaintiffs are not attempting to sue in the name of the mortgage holder and there

is no question of standing as it pertains to the mortgage holder claim.  Rather, the Plaintiffs

are claiming, among other things, that the Defendant was negligent in failing to name the

mortgage holder on the policy.  The policy provides that in the event the claim is denied as to

the named insured, a mortgage holder can still collect under the terms of the policy.  (See

Definitions Ex. 10; see also Policy Ex. 14)  This can be an important provision in an

insurance policy because it means that if the insured is deprived of coverage (as in this case

because of a claim of arson), then the mortgage holder which has an interest in the property

can make a claim and receive payment up to the amount of the mortgage.

    Another practical effect of having the mortgage holder on the policy is that if the

insurance company pays the mortgage holder where it has denied the claim, it becomes

subrogated to the extent of its payment and generally takes an assignment of the mortgage

interest.  However, from the Plaintiff's perspective, if their mortgage is paid off, they gain a

substantial benefit.  If their insurance company now holds the mortgage, then they would

have various defenses to the insurance company as any efforts by the insurance company to

foreclose would likely become part of the pending breach of insurance policy or breach of

contract action.  Conversely, if the mortgage company is not named, which apparently is

what occurred in this case, then the insurance company pays no one and the mortgage

company proceeds through the ordinary course to foreclose on the property, which is what happened here.

It is the Plaintiffs' claim that they suffered direct damages because the insurance company did not include their mortgage holder on the insurance policy and that meant their mortgage holder did not get paid leaving the mortgage holder with no option but to foreclose depriving the Plaintiffs of their property. The damages to the Plaintiffs were severe in this case because the mortgage was a blanket mortgage which was secured by not only the subject property but also the multi-family home and the Plaintiffs marital residence. Because the mortgage company was not named on the policy, the mortgage company foreclosed and because the mortgage was a blanket mortgage, Mr. and Mrs. Kelis lost their marital home as well. These damages are significant and severe. They are damages that flow to Mr. and Mrs. Kelis, and standing has nothing to do with the Plaintiff's claim in this regard.

Indeed, it appears the Defendant concedes that this is really not a question of standing either as to Mr. and Mrs. Kelis or as to the mortgage holder because the Defendant tries to argue in its Motion for Summary Judgment that it was correct when it renewed the insurance policy and did not name the Plaintiff's mortgage holder. For example, the Defendant states "it is quite clear the subject policy of insurance did not list the mortgagee under item 7 of the declaration page." (Def. Memo at 9[3]) The Defendant goes on to state "this fact is confirmed

---

[3] The Defendant has not included page numbers on its memorandum and Plaintiffs have referenced page numbers for ease of reference.

by the Plaintiff's Agent, Michael Battaglino's request to add a mortgagee to the subject

policy on January 29th after the date of the subject fire." (Def. Memo at 10)  The Defendant

makes these assertions because it is attempting to argue factually that it was correct in not

naming the mortgage holder.  That argument goes to the merits of a part of the Plaintiffs

claim of negligence and part of the Plaintiffs request for reformation.  The Defendant's

comments have absolutely nothing to do with whether the Plaintiffs have standing to sue for

negligence concerning the failure to name the mortgage holder and certainly have nothing to

do with the presence or absence of the mortgage holder in this case.  As will be shown in the

following paragraphs, the mortgage holder should have been named on the policy, the

Defendant knew or should have known of this, and the failure to have named the mortgage

holder caused damages to the Plaintiffs.  Whether these allegations are true are questions of

fact for the jury, not questions of law appropriate for the Court on a Motion for Summary

Judgment.  Fogarty and Michaud, supra.

        The Defendant argues that the Plaintiff's agent, Battaglino's request made after the

fire to add the mortgage holder is somehow an admission that the mortgage holder was not

supposed to be on the policy.  To the contrary, the agent was simply trying to confirm what

he believed had been a fact all along.  It is quite common for insurance companies after a loss

to amend the policy for various reasons.  In direct opposition to the Defendant's assertion

that Mr. Battaglino has somehow admitted that the mortgage holder was not supposed to be

on the policy, Mr. Battaglino's affidavit specifically states that the mortgage holder was to be

included on the policy. (Battaglino Affidavit Ex. 3) Mr. Battaglino's affidavit states in

pertinent part "it is my understanding that when the Lexington policy was issued, it listed the

mortgage holder as none, and I do not know why the ABC Mortgage Company was not

transferred over to the Lexington policy, and this, in my opinion represents a mistake." At

paragraph 11 of his affidavit, Mr. Battaglino indicates that in the prior policy involving the

Defendant's broker, Coleman, the mortgage holder was missing and the ABC Mortgage Co.

was then added to the policy. Somehow that did not get repeated to the policy issued by this

Defendant. Mr. Battaglino at paragraph 13 states:

> It is my understanding that when the Lexington policy was issued, it listed the
> mortgage holder as none, and I do not know why the ABC Mortgage
> Company was not transferred over to the Lexington policy, and this, in my
> opinion, represents a mistake.

Further, Mr. Battaglino indicates at paragraph 14 that if the mortgage holder would

have been added there would have been no change in the premium and that is "what I believe

was the intent of the parties all along." (Battaglino Affidavit Ex. 3)

In addition, the Plaintiffs allege the Defendant was negligent in failing to process the

insurance information, failing to "obtain complete information from the Plaintiffs...," failing

to review "prior policies and other information," and failing to have the Plaintiffs review the

policies for completeness and accuracy. (Complaint Ex. 11, Count 3)

The agent indicates in his affidavit that in the prior policy procured by the

Defendant's broker, Coleman, the mortgage company was added to the policy. As also

indicated this was a blanket mortgage covering the multi-family home and Mr. and Mrs. Kelis marital residence.  Apparently it was only this policy that failed to have the mortgage holder included.  Attached as Exhibit 15 are a series of documents, all of which show a mortgagee.  ABC Mortgage Co. is on one document as well as the prior mortgage holder, New England Bank on another document.  There is also a certificate of insurance naming American Business Credit (ABC) and a series of insurance agent notifications identifying the client name as James Kelis/Hazardvilla Restaurant and putting the insurance agent on notice of a blanket mortgage covering all of the properties.  The Defendant's agent, Coleman knew of the mortgage.  The Plaintiffs have alleged that this Defendant was negligent in failing to take note of this information, and they are suing for damages as a result of that alleged negligence, and they are requesting reformation to add the mortgage holder on the policy. These are questions of fact that go to the jury, not questions of standing.

Finally, in connection with this policy, it is important for the Court to note the difference between the insurance policy in effect on the date of the loss and the insurance documentation in the possession of the Defendant prior to the date of the loss.  It is also important to again point out that the renewal application that apparently formed the basis of the insurance policy in effect on the date of the loss is mysteriously missing, having not been produced by the broker or by the Defendant in its underwriting file.  The policy declarations page under the mortgage information box has the word "none."  (Policy Ex. 14)  One would expect that means that there was some affirmative statement by the insured indicating they

had no mortgage.  Yet in its motion the Defendant has not cited any affidavit or statement or any piece of paper whereby the Defendant can argue that Mr. and Mrs. Kelis indicated they did not have a mortgage.

        To the contrary, as indicated by the various mortgage documents referenced above, like 90% of the people who own real estate, Mr. and Mrs. Kelis had a mortgage.  What is also significant and omitted from the Defendant's moving papers is that the initial application for the prior year's policy does not indicate "none."  Even though this document was apparently never seen and certainly never signed by Mr. and Mrs. Kelis, it is significant because it requests information as to the mortgage holder and by mistake, it is left blank. (Insurance Application Ex. 4) On this very significant issue, the Defendant offers no affidavit, case law or any other proposition other than the self serving deposition testimony of its own underwriter when it argues that "when a mortgagee question is left blank on an application, it is assumed there is no mortgagee."  (Def. Memo at 10)  The Plaintiffs certainly do not take the position that if a question on an application is left blank that means none.  The Plaintiffs take the position that at all times they had a mortgage, any representatives that asked were told they had a mortgage and as indicated by their agent, if the mortgage holder was not repeated onto the Defendant's policy when the Defendant's broker switched to the Lexington restaurant program, that was a mistake.  (Battaglino Affidavit Ex. 3).  Certainly, it is a question of fact for the jury as to whether the Defendant was correct when it took a blank to mean "none," and whether under the circumstances the Defendant was negligent.

In sum, while the Defendant argues that the Plaintiffs have no standing to make a mortgage holder claim and that the mortgage holder is not a party and does not have standing, in reality the Defendant is not arguing standing at all.  It is simply trying to argue that it was not negligent when it put "none" on the policy and did not name the mortgage holder.  The Plaintiffs have alleged negligence, they have now offered evidence to support that negligence, they are directly damaged by the failure to have had the mortgage holder named on the policy, and whether they are able to prove their allegations is a question of fact not properly an issue for summary judgment.

      c.      <u>Whether The Defendant Was Negligent In Failing To Name Mr. And Mrs. Kelis As Individual Insureds On The Policy Of Insurance And Whether The Policy Should Be Reformed Are Questions Of Fact Not Properly The Subject Of A Motion For Summary Judgment.</u>

In point B of its memorandum the Defendant again raises the question of standing. The Defendant now appears to raise, for the first time, the question of whether or not Mr. and Mrs. Kelis have standing to be Plaintiffs in this action.  The Defendant's position and timing is certainly curious.  In its March 24th Answer, the Defendant admitted the Plaintiff's allegation that "the Plaintiffs, James and Deborah Kelis (hereinafter "Kelis") are residents of the State of Connecticut, are the owners of real estate located at 276 North Maple Street, Enfield, Connecticut and are officers, principles and owners of Kelis Corp."  (See Answer of

Defendant attached hereto as Exhibit 16)  More importantly, the Defendant admitted that "prior to February 22, 2000 the Defendant issued to the Plaintiffs a policy of insurance insuring the Plaintiff's restaurant, known as the Hazardvilla Restaurant located in Enfield, Connecticut…."

Further, it its affirmative defenses, there is no claim that the Plaintiffs, James and Deborah Kelis are not insureds, are not the proper parties or have no standing to prosecute this action.  Again, aside from the fact that Defendant's claims are untimely, have likely been waived and are somewhat difficult to discern, it appears as it does with the question of mortgagee standing raised by the Defendant, that the Defendant is really trying to argue the merits of the claim as to whether it was negligent and not standing.  The Defendant's citations contained in point B of its memorandum highlight the flaw in its analysis and argument concerning standing.  The Defendant cites selected excerpts from <u>Mazon v. Camden Fire Insurance Assoc.</u>, 182 W.VA. 532 (1990) and concludes "under this general proposition, the Plaintiffs, James and Deborah Kelis who are neither party to nor a contemplated beneficiary of the subject policy of insurance, lack standing to bring an action on that contract."  (Def. Memo at 12).  The <u>Mazon</u> case is vastly different from any of the facts of this case.  A brief analysis serves to illustrate the error in the Defendant's motion for summary judgment on this point.

First, in <u>Mazon</u> the Plaintiff was a divorced wife who several years after her divorce attempted to make a claim for a fire to property that she owned a one-half interest in.

Second, what is critical is that in <u>Mazon</u> the insurance company paid the entire claim for all of the building damages to the named insured.  In other words, the ex-wife was trying to get the insurance company to pay twice.  The Court said "after Camden had already paid the insurance proceeds to Mr. Watts respondent initiated a civil action …."  <u>Id.</u>  Third, in <u>Mazon</u> there was a statute in effect in West Virginia that specifically stated that upon payment by an insurance company of the person designated in the insurance contract, such contract shall fully discharge the insurer…."  <u>Id.</u>  The <u>Mazon</u> case has absolutely nothing to do with this case.  It does not support any contention of lack of standing.

However, the <u>Mazon</u> case does bring to light a critical question upon this motion for summary judgment.  If the Defendant is conceding that if the building loss is determined to be covered it is prepared to pay the claim, that may be one thing.  But from the Defendant's papers it appears the Defendant is claiming that in the event the building claim is determined to be covered, it will pay no one or perhaps some other entity because the true owners, Mr. and Mrs. Kelis are not named on the policy.  As will be shown in the reformation discussion, that is not only inequitable it is unconscionable.  The Defendant's citation to the <u>Mazon</u> decision, where the claim was paid in full and an insured was trying to receive double recovery is quite different from the issue before the Court in this case.

In connection with the merits of the claim as to whether or not the Defendant was negligent in failing to name James and Deborah Kelis, again the Defendant erroneously concludes that "the only named applicant was Kelis Corp. dba Hazardvilla Restaurant" and

refers this Court to Defendant's Exhibit B.  Defendant's Exhibit B does not reference one insured called Kelis Corp. dba Hazardvilla Restaurant; it specifically references two insureds. Although as indicated, the application is quite curious because on one page the second insured appears to have been whited over but on another page the application clearly demonstrates Kelis Corporation and Hazardvilla Restaurant meaning two insureds, not one. As Mr. Battaglino stated in his affidavit, Hazardvilla Restaurant is the building owned by Mr. Kelis and the intention was to include him.  If he was not included and the insurance company wants to claim that is an error, than it is a mistake if not negligence on the part of the Defendant.  (Application at Ex. 4, Affidavit at Ex. 2)

In addition, the Plaintiffs have plead that the Defendant was negligent in regard to various insurance information, in regard to prior insurance policies and in regard to not having the Plaintiffs verify the insurance information.  Attached as Exhibit 9 is the Utica First prior policy information which lists as the insureds "Kelis Corp. and Hazardvilla Restaurant James G. Kelis."  Apparently, that is precisely how Plaintiffs should have been listed on this policy to avoid a claim by the Defendant that they are not insureds.  Further, attached as Exhibit 17 is the surplus lines affidavit which apparently is a State of Connecticut required insurance document allowing insurance companies who are not licensed to transact business in this State to do business in this State.  The surplus lines affidavit is an affidavit by the insured whereby the insured swears to the fact that it was informed that:

the amount of insurance indicated herein could not be obtained from certain insurers not licensed to transact business in the State of Connecticut.  I/We therefore directed the producing agent named herein to obtain said insurance through the office of the licensed surplus broker named herein.

It goes on to say "I/We have been advised by the producing agent herein that such insurance represents only the excess over the amounts procurable from licensed insurers or the Connecticut residual market."  The surplus lines broker is the Defendant's broker, Robert Coleman Insurance Services, Inc.  Perhaps significantly, and what the Plaintiffs believe is dispositive to this aspect of the motion is the insured is "James Kelis." (Surplus Lines Affidavit Ex. 17)   The insured is not Kelis Corp., it is not Hazardvilla Restaurant, it is not even James Kelis signing as an officer of Kelis Corp.  It is James Kelis individually, the person who should have been named on the insurance policy but was not.  Given such a document, whether the Defendant was negligent in failing to name Mr. Kelis on the policy is a question of fact for the jury not a question of law for this motion.  For this additional reason, the Motion for Summary Judgment should be denied.


    d.    <u>Reformation Is An Appropriate Remedy In This Case.</u>

The Defendant's argument relative to an adequate remedy of law is curious.  The Defendant appears to say that Mr. and Mrs. Kelis are the only officers and shareholders of Kelis Corp., that Kelis Corp. would be the recipient of insurance proceeds, that the proceeds would pass to Mr. and Mrs. Kelis, and therefore, they have "an adequate remedy at law" and

this is the reason reformation should be denied.  The Plaintiffs do not understand this argument.

In fact, Kelis Corp. does not own the building.  Kelis Corp. only owns the restaurant equipment, and the restaurant equipment was only insured for $98,000.00.  If the restaurant equipment claim is honored, then a check to Kelis Corp. is appropriate, and after the deduction of whatever appropriate expenses or otherwise pass through the corporation, then perhaps Mr. and Mrs. Kelis as the sole shareholders and officers may somehow benefit from those proceeds.  However, the building is not owned by Kelis Corp. and the building is certainly not owned by a non-entity called Hazardvilla Restaurant.  The building is owned by Mr. and Mrs. Kelis and is insured for $550,000.00.  If the building damages are paid, why would the Defendant agree to pay someone other than the owner?   Kelis Corp. does not have an insurable interest in the building, and while the Plaintiff would certainly appreciate clarification as to whether the Defendant is prepared to pay Kelis Corp. for the building damages, whether the Defendant indicates this or not, there is simply no assurance that Mr. and Mrs. Kelis, the actual owners will be paid under this policy absent reformation or a finding of the Defendant's negligence for the failure to name them.  [4]

---

[4] There is a side issue concerning whether the corporation may owe taxes and whether Mr. and Mrs. Kelis would not.  In this event, any money paid to the corporation may go for taxes, and money paid to Mr. and Mrs. Kelis might not.  The point is there is a difference between the parties and in the absence of some commitment by the Defendant as to who it would be prepared to pay if coverage is afforded, the reformation count is appropriate in this case.

Another reason why Mr. and Mrs. Kelis have an individual interest as opposed to an interest through Kelis Corp. is because there is a claim of innocent insured in this case. It is apparent the Defendant would believe that if Mrs. Kelis is not an individual insured, but instead is forced to make a claim through Kelis Corp. that she might very well lose her status as an innocent insured. Regardless, Mr. and Mrs. Kelis are the owners of the building, they have the insurable interest in the building and if a payment is rendered for the building one or both of them should be receiving the payment.

In regard to the question of reformation, the Defendant correctly cites the law that "if by reason of mutual mistake or by reason of a unilateral mistake coupled with fraud or inequitable conduct on the part of the other party a written agreement does not express the true intent of the parties the agreement may be reformed." Citing <u>Rodie v. National Surety Corp.</u>, 143 Conn. 66, 69 (1955). However, the Defendant then erroneously applies the law and also erroneously concludes that there would be no mutual mistake in this case because "the mistake must be mutual and common to both parties, in essence there must be a mutuality of the mistake as to both parties." (Def. Memo at 15) The defendant goes on to argue that it did not make the mistake, however as pointed out previously, the initial application lists two insureds, not one, and somehow when the Defendant renewed the policy it changed it from two insureds to one. In doing so, the Defendant eliminated coverage for one of the insureds.

As was also shown, the Defendant was in receipt of a surplus lines affidavit whereby the insured was designated to be James Kelis.  (Surplus Lines Affidavit at Ex. 17)  As was also shown, on all of the prior insurance information Mr. Kelis appears together with Hazardvilla Restaurant.  Finally, as indicated by the affidavit of Mr. Battaglino and the affidavit of Mr. Kelis, at all times Mr. Kelis assumed he had the proper coverage, and if he was not listed on the policy that was a mistake that was not even his mistake.

In addition, the Defendant never addresses the other aspect of the law of reformation which is that when there is a unilateral mistake coupled with inequity, reformation is appropriate.  If Mr. and Mrs. Kelis at all times owned the building which was insured for over a half million dollars, and they paid valuable insurance premiums to have the building insured, it would certainly be inequitable and unconscionable to exclude them from receiving payment should that building become damaged by a covered loss.  Further, if this Defendant has been in receipt of information indicating that Mr. Kelis should have been named on the policy, it would be inequitable to deny reformation and reformation would be applied under the doctrine of unilateral mistake.

In <u>Great American Insurance Co. v. Johnson</u>, 25 F.Supp. 847 (4th Cir. 1928), the dispute concerned the location of a new house and a cause of action for reformation of the contract was commenced.  In language which has been cited throughout the jurisdictions, the Court said:

> where fraud is absent, it must be established that both parties agreed to something different than what was expressed in writing and the proof on this point should be clear so as to leave no room for doubt … even where there is no actual fraud but merely such knowledge that makes it inequitable for one party to retain an advantage, the Court will deal as summarily with that inequitable position of the party as in the other case with his fraud.  Id . at 535.

Here, it would be inequitable to deny reformation.  We know that Mr. and Mrs. Kelis did not make a mistake, and somewhere down the line between the Defendant's broker and the Defendant, mistakes were made.  Either way, it would clearly be inequitable if Mr. and Mrs. Kelis were denied recovery, and it would be inequitable to not reform the policy to add them because they were the owners of the property which was insured.

In Derby Savings Bank v. Oliwa, 49 Conn.App. 602, 714 A.2d 1278 (1998) the claim involved a mistake where the mortgage deed contained a description of the wrong property.  Even though the mistake was made by the attorney who prepared the mortgage deed, the Court granted reformation holding "reformation is appropriate in cases of mutual mistake…reformation is also available when the instrument does not express the true intent of the parties owing to the mistake of one party…"  Id. at 604.  See also Wesley v. Schaller Subaru, Inc., 2004 Westlaw 2166898 (Attached hereto as Exhibit 16)  Mutual mistake was found and unilateral mistake occurs "when one party knows of the mistake at the time of execution and knowing lets the other side err."  It is submitted that against this backdrop reformation by adding Mr. and Mrs. Kelis to the policy would be appropriate.

Finally, as with negligence, whether a mutual mistake may have been made or unconscionable or inequitable conduct resulting, questions of fact are not appropriate questions for a motion for summary judgment.  Our courts have uniformly held that "in the absence of definitive contract language … the determination of what the parties intended to accomplish in the contractual commitments is a question of fact of the intention of the parties, and an inference of fact."  Gaudio v. Griffin Health Services Corp., 249 Conn. 523., 533, 733 A.2d 197 (1999).  See also Picataggio v. Romeo, 36 Conn.App. 791, 794, 654 A.2d 382 (1995).

In sum the Defendant by arguing that the mistake was not mutual or that in fact there was no mistake, points out that these are not issues to be resolved on a motion for summary judgment.  These are issues to be resolved at trial.  The Plaintiffs have offered ample evidence to indicate that the Defendant was negligent because it failed to name them on the policy and that if the Defendant is now trying to take advantage of that, it is inequitable, damages should be awarded for negligence and reformation may be appropriate.  None of these issues can be decided upon a motion for summary judgment, and to the extent they involve questions of fact or the intention of the parties, those issues need to be determined by the trier of fact.

For these additional reasons, the Defendant's Motion for Summary Judgment should be denied.

THE PLAINTIFFS

BY_____

Jon D. Biller
Biller, Sachs, Raio & Zito
2750 Whitney Avenue
Hamden, CT 06518
(203) 281 1717
Fed Bar No. CT 03546

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed, postage prepaid, on the above date to the following counsel of record:

Skelley Rottner P.C.
P.O. Box 340890
Hartford, CT 06134-0890

_____

Jon D. Biller